**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**TEDVIN J. PERRY, SR.,**

***Plaintiff,***

**v.**

**COLDWELL BANKER RICHARD ELLIS GROUP, INC., *et al.*,**

***Defendants.***

**Case No.: 1:25-cv-04026-JRR**

# MEMORANDUM OPINION

Pending now before the court are Defendant KeHE Distributors, Inc.'s ("KeHE") Motion to Dismiss at ECF No. 2 (the "KeHE Motion") and CPUS Principio Commerce Center II, LP's ("CPUS") Motion to Dismiss at ECF No. 15 (the "CPUS Motion"). The court has reviewed all papers; no hearing is necessary. Local Rules 105.6, 207 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motions will be granted.[1]

## I. BACKGROUND[2]

On September 9, 2025, *pro se* Plaintiff Tedvin J. Perry, Sr., initiated this action in the Circuit Court for Cecil County, Maryland. (ECF No. 1-8.) In his operative Amended Complaint (ECF No. 11; the "Complaint"), Plaintiff alleges that on September 20, 2023, he was "injured" at a KeHE warehouse when he slipped and hit his head and upper body "due to the ammonia pipes leaking gallons of water in the freezer department where [he] worked." *Id.* at p. 5. This was caused by a "massive build up of ice turning the floors into a[n] ice skating rink." *Id.* Plaintiff further alleges that "[m]anagement was aware and informed of the hazard[ous] condition [he] [was]

[1] For the reasons set forth herein, Plaintiff's Motion for Default at ECF No. 12, filed prior to removal, will be denied as moot.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 11.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

force[d] to work in." *Id.* Plaintiff alleges that, as a result of his injury, his "life has been completed changed," such that, *inter alia*, he has "massive headaches," "can't remember things like [he] used to," "can't sleep," and his "back pain is nonstop."[3] *Id.*

On December 8, 2025, KeHE removed the action and its Motion to this court. (ECF Nos. 1, 2.) KeHE and CPUS then filed the instant Motions. (ECF Nos. 2, 15.) Plaintiff's Complaint names two Defendants—Coldwell Banker Richard Ellis Group, Inc. ("CBRE"), and KeHE. (ECF No. 11.) CPUS asserts, and Plaintiff does not dispute, that it is the proper Defendant and CBRE is improperly named.[4] (ECF Nos. 15, 20.) Plaintiff filed what the court has liberally construed to be a response in opposition to both the KeHE and CPUS Motions.[5] (ECF Nos. 20, 25.)

## II. <u>LEGAL STANDARD</u>

Defendants move to dismiss the Complaint on multiple grounds, with CPUS moving to dismiss under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), and KeHE moving to dismiss solely under Rule 12(b)(6).

### A. Federal Rule of Civil Procedure 12(b)(5)

"A motion to dismiss for insufficient service of process is permitted by Federal Rule 12(b)(5)." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). Because "[t]he real

[3] To support this allegation, Plaintiff discusses "screenshots" of text messages from co-workers and management. *Id.* The court is aware of screenshots included with KeHE's exhibits in the notice of removal. (ECF Nos. 1-4, 1-5, 1-6.) As there is no indication whether these screenshots were attached to the Complaint, the court declines to consider them in ruling on the instant Motion. Regardless, even were the court to consider the screenshots in ruling on the instant Motion, it would not materially affect the court's opinion.

[4] As the court explains *infra*, even were CBRE the proper party, this action would nonetheless be subject to dismissal against it for failure to state a claim upon which relief may be granted.

[5] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

purpose of service of process is to give notice to the defendant," "mere technicalities should not stand in the way of consideration of a case on its merits." *Scott v. Maryland State Dep't of Lab.*, 673 F. App'x 299, 304 (4th Cir. 2016) (citation modified). Indeed, "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process;" nonetheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Upon a defendant's Rule 12(b)(5) challenge to service of process, the plaintiff bears the burden to establish adequate service. *Scott*, 673 F. App'x at 304. "Inasmuch as the sufficiency of process and service of process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits, is appropriate." *Davis v. Matroo*, No. 5:13-CV-00233-BO, 2013 WL 5309662, at *2 (E.D.N.C. Sept. 19, 2013) (citing *Dimet Proprietary, Ltd. v. Indus. Metal Protectives*, 109 F. Supp. 472, 475 (D. Del. 1952)). "Although insufficient service of process does not necessarily warrant dismissal, the court may dismiss the complaint for failure to comply with Rule 4 or quash the service, thereby permitting the plaintiff to attempt to properly serve the defendant." *Miller v. Baltimore City Bd. of Sch. Comm'rs*, 833 F. Supp. 2d 513, 516 (D. Md. 2011) (citing *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575–76 (4th Cir. 1983)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

With respect to pleading requirements, this court has explained:

> Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of FED. R. CIV. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.

*Ensor v. Jenkins*, No. CV ELH-20-1266, 2021 WL 1139760, at *11 (D. Md. Mar. 25, 2021) (citing *Twombly*, 550 U.S. at 555–56). Each "allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Although a complaint need not contain detailed allegations, the "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are thus insufficient. *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

### A. CPUS's Motion to Dismiss

CPUS, in place of named Defendant CBRE, argues dismissal is warranted because

Plaintiff's service of process was insufficient and the Complaint fails to state a claim against it. The court addresses each argument below.

### *1. Rule 12(b)(5): Insufficient Service of Process*

CPUS first argues that Plaintiff's service of process was "defective"—specifically that Plaintiff's Affidavit of Service states service was completed on CBRE through its resident agent, The Corporation Trust Company in Delaware, despite the fact that CBRE is not a Delaware entity. (ECF No. 15-1 at p. 4.) Further, "[b]ecause Plaintiff named the wrong entity, CPUS did not receive actual notice of this lawsuit until December 15, 2025, when co-defendant [KeHE]'s counsel forwarded materials related to the case." *Id.* at p. 8. Effectively, CPUS argues it "has never been served through its Delaware registered agent and has received no notice of proper service."[6] *Id.*

Service of process is governed by Federal Rule of Civil Procedure 4. Rule 4(h) provides that a corporation must be served either as permitted by Maryland law or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h); *see also* FED. R. CIV. P. 4(e)(1). Relevant here, the Maryland Rules provide that service is made upon a corporation "by serving its resident agent, president, secretary, or treasurer." MD. RULE 2-124(d). If the corporation has no resident agent, "or if a good faith attempt to serve the resident agent . . . has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly

[6] In further support of this argument, CPUS provides a notarized affidavit from its Vice President, Christian Ramos. (ECF No. 15-4.) The affidavit attests that CPUS utilizes the same registered agent Plaintiff served—The Corporation Trust Company. In other words, Plaintiff served the correct registered agent, but did so in the registered agent's capacity as the agent for another entity, not CPUS.

authorized to receive service of process." *Id.* Following service, "proof of service must be made to the court." FED. R. CIV. P.4(l).

CPUS states it became aware of the underlying lawsuit only because of KeHE's courtesy in forwarding it the relevant materials (especially considering that CPUS is not directly named a defendant in this case). (ECF No. 15-1 at p. 8.) In what the court liberally construes as Plaintiff's response to the Motions, Plaintiff states, "[a]fter numerous attempts to get the registered agent and no one willing to give me the information requested," he thought CBRE "was in fact the agent." (ECF No. 20.) However, the "Federal Rules require that the summons 'be directed to the defendant[.]'" *Jeffries, v. United Wholesale Mortg.*, No. 5:25-CV-00721-M, 2026 WL 2082148, at *3 (E.D.N.C. June 12, 2026), *rep. and recommendation adopted sub nom.*, 2026 WL 2080007 (E.D.N.C. July 17, 2026) (alteration in original) (quoting FED. R. CIV. P. 4(a)(l)(B)). "So while 'service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way[,]' the summons must name the defendant in a way that the defendant knows it is being called into court." *Id.* (alteration in original) (quoting *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 224 (4th Cir. 1999)). Although Plaintiff ultimately served the correct registered agent, Plaintiff did not effectuate service on that entity as agent of the correct entity.[7]

CPUS further states, with respect to CBRE, "to [its] knowledge, no such entity exists or is registered in Delaware." (ECF No. 15-1 at p. 8.) Accordingly, where CPUS has identified itself as the proper Defendant, and Plaintiff poses no challenge, there is no dispute that CPUS was not properly served in accordance with Rule 4.

---

[7] As discussed *supra* at note 6, The Corporation Trust Company is CPUS's registered agent. (ECF No. 15-4 at pp. 1–2.)

While the court is cognizant that "mere technicalities" should not stand in the way of consideration of a case on its merits, *see Scott*, 673 F. App'x at 304, *supra*, and that Plaintiff is *pro se*, the court is nonetheless persuaded that proof of service should be quashed and dismissal is warranted under Rule 12(b)(5). Plaintiff, in what the court liberally construes to be his response to the Motion, offers no explanation; nor has Plaintiff made any attempt to cure the defective service. (ECF No. 20.)[8] In sum, Plaintiff has made no effort to satisfy his burden to establish service. *See Scott*, 673 F. App'x at 304, *supra*. Thus, where the "plain requirements for the means of effecting service of process may not be ignored[,]" *Armco*, 733 F.2d at 1089, *supra*, Plaintiff's insufficient service of process and continued failure to correct same warrant dismissal of this action pursuant to Rule 12(b)(5) against CPUS, as named incorrectly under CBRE's name. Nonetheless, the court addresses below the sufficiency of Plaintiff's pleading as against CPUS.

***2. Rule 12(b)(6): Failure to State a Claim***

CPUS next argues that, aside from the case caption, the Complaint "makes no mention of" CPUS or CBRE, "makes no allegations concerning" CPUS or CBRE, and "seeks no relief from CPUS or CBRE, thereby warranting dismissal for a failure to state a claim. (ECF No. 15-1 at p. 4.)

As discussed above, Rule 8(a)(2) "requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). In failing to offer any allegations as to Defendant CPUS or CBRE, Plaintiff fails to provide fair notice of the grounds of the claims he seeks to bring.

---

[8] Plaintiff, in his response to the Motion, attaches Google searches describing "[KeHE] in [D]elaware[,]" and "[KeHE biggest distributors," but this does not clarify any issues as to service of CPUS. *See* ECF No. 20-1.

Further, while the Fourth Circuit has not "categorically foreclose[d] the possibility that a complaint that makes allegations collectively against 'Defendants' may sometimes survive a motion to dismiss[,]" such a pleading is insufficient where a plaintiff fails to allege "sufficient facts to allow the court to infer liability as to *each* defendant." *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023) (citing *Iqbal*, 556 U.S. at 676). A pleading cannot simply "lump[] [Defendants] together in the complaint without sufficient detail," or further without "alleging any facts specific to each entity." *Wormack v. Caesars Baltimore Mgmt. Co., LLC*, No. 1:22-CV-01108-SAG, 2022 WL 2668183, at *5 (D. Md. July 11, 2022) (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015), *as amended on reh'g in part* (Oct. 29, 2015)). Similarly, in failing to allege any facts that connect CPUS or CBRE to the general factual allegations in the Complaint, Plaintiff fails to present specific factual allegations that give CPUS "fair notice to *that* defendant of the plaintiff's claim and the underlying factual support." *Langford*, 62 F.4th at 125 (emphasis in original). Plaintiff therefore fails to state a claim against CPUS under Rule 12(b)(6) based on impermissible group pleading.

For these reasons, CPUS, under the erroneously named CBRE, will be dismissed from this action pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) based on Plaintiff's insufficient service of process and failure to state a claim against it.[9]

**B. KeHE's Motion to Dismiss**

KeHE also moves to dismiss the Complaint for a failure to state a claim under Rule 12(b)(6), arguing that that it is "immune from this suit because it is Plaintiff's employer under the Maryland Workers' Compensation Act ['WCA']." (ECF No. 2-1 at p. 2.)

"The WCA 'protect[s] workers and their families from hardships inflicted by accidental

[9] Even were CBRE the properly named Defendant, the action still would properly be dismissed against it under Rule 12(b)(6).

work-related injuries and occupational diseases.'" *Butrim v. Mayor & City Council of Balt.*, 821 F. Supp. 3d 509, 530 (D. Md. 2026) (alteration in original) (quoting *Matter of Collins*, 468 Md. 672, 686 (2020) (citation omitted)). Under the WCA, "an employer is generally required to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is at fault for the injury." *Buitron v. Tractor Supply Co.*, 723 F. Supp. 3d 428, 432 (D. Md. 2024) (footnote omitted) (quoting *Ledford v. Jenway Contracting, Inc.*, 259 Md. App. 534, 543 (2023), *aff'd*, 490 Md. 666 (2025) (internal quotation omitted)).

Relevant here, the WCA makes clear that, "[e]xcept as otherwise provided in this title, the liability of an employer under this title is exclusive." MD. CODE ANN., LAB. & EMPL. § 9-509(a). Further, "[e]xcept as otherwise provided in this title, the compensation provided under this title to a covered employee . . . is in place of any right of action against any person." *Id.* § 9-509(b). Effectively, "[c]ompensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job." *Matter of Collins*, 468 Md. at 686 (quoting *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 438 (1996)); *see also McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 99 (D. Md. 2011) (holding that court "need not reach the merits" of plaintiff's claims "because the [WCA] preempts all such tort action against an employer."). "This rule of exclusivity serves to 'protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of 'caring for the helpless human wreckage found [along] the trail of modern industry.'" *Butrim*, 821 F. Supp. 3d at 530 (alteration in original) (quoting *Polomski v. Mayor & City Council of Balt.*, 344 Md. 70, 76 (1996) (citations omitted)).

Importantly, the WCA is not without exceptions. "Compensation under the WCA is an employee's exclusive remedy unless the injury is shown to be the result of 'the deliberate intent of the employer to injure or kill the covered employee.'" *Tynes v. Shoney's Inc.*, 867 F. Supp. 330, 332 (D. Md. 1994) (quoting MD. CODE ANN., LAB. & EMPL. § 9-509(d)). "In other words, a plaintiff's "complaint must be based upon allegations of an intentional or deliberate act by the employer *with a desire to bring about the consequences of the act*." *Butrim*, 821 F. Supp. 3d at 530 (emphasis in original) (quoting *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255 (1986)). Additionally, an exception exists when, if injured, "an employer fails to secure compensation in accordance with" the WCA. MD. CODE ANN., LAB. & EMPL. § 9-509(c). Thus, both exceptions afford a plaintiff an opportunity to seek a remedy in court. *See* MD. CODE ANN., LAB. & EMPL. § 9-509(c)–(d) (stating that a "covered employee may" . . . bring a claim for compensation under [the WCA]; or . . . bring an action for damages.").

Here, KeHE, as Plaintiff's employer, argues the WCA is Plaintiff's "exclusive remedial avenue for his personal injuries arising out of his employment." (ECF No. 2-1 at p. 3.) Further, KeHE avers that Plaintiff "acknowledges that he filed and settled a workers compensation claim" with it. *Id.* Indeed, Plaintiff alleges he went through the workers compensation process with KeHE, and was dissatisfied with the result of the process. (ECF No. 11 at p. 5.) Specifically, Plaintiff claims, *inter alia*, he "didn't receive a check in [five] months," and once he did, KeHE told his "short term insurance company that [he] made [three] times less than what [he] truly made[,]" leading to a settlement "for nowhere near what [he] was owed." *Id.* More generally, Plaintiff claims, *inter alia*, KeHE "was aware and informed of the hazard[ous] condition we [were] forced to work in," was "aware of the damaged ammonia pipes that [were] pouring gallons of water on the freezer floor causing a massive build up of ice on the floors," and ultimately "not just

knew about the danger [he] was placed in but refused to fix the problem until months after" his injuries. *Id.*

Per the WCA's exceptions, an injured employee may bring a compensation claim or a damages action if the employee cannot secure compensation or was injured by the employer intentionally. *See* MD. CODE ANN., LAB. & EMPL. § 9-509(c)–(d), *supra*. The court agrees with KeHE that Plaintiff's allegations do not invoke either WCA exception; thus the WCA bars the underlying action against KeHE based on immunity. For starters, while Plaintiff alleges KeHe was aware of the hazardous condition, *see* ECF No. 11 at p. 5, Plaintiff offers no allegations, accepted as true, that KeHE acted with deliberate intent to injure (or kill) him. *See* MD. CODE ANN., LAB. & EMPL. § 9-509(d). Nor does Plaintiff offer "allegations of an intentional or deliberate act by [KeHE] with a desire to bring about the consequences of the act." *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255 (1986); *Fields v. Dana Container, Inc.*, No. CV BPG-21-1341, 2022 WL 1422896, at *4 (D. Md. May 5, 2022) (discussing same). Further, Plaintiff's assertions on this point, ECF No. 11 at p. 5, are similarly conclusory in nature and unsupported by a factual basis.[10] *See Johnson*, 305 Md. at 255 (finding there were "no facts alleged to show that the employer had a 'desire' to bring about the consequences of the acts or that the acts were premediated with the specific intent to injure" employee); *Fields*, 2022 WL 1422896, at *4 (discussing same). Accordingly, Plaintiff does not allege facts to support this WCA exception to permit suit against KeHE.

Further, Plaintiff does not adequately allege he has failed to secure compensation under § 9-509(c). With respect to establishing this claim, as this court has recently stated:

[10] Even considering the screenshots of Plaintiff's text messages discussed *supra* at note 3, the screenshots do not support a plausible inference that KeHE acted intentionally or deliberately to injury Plaintiff. *See* ECF Nos. 1-4, 1-5, 1-6.

> Elsewhere, the WCA defines the phrase "secure compensation" to mean, among other things, "maintaining insurance with an authorized insurer." [MD. CODE ANN., LAB. & EMPL.] § 9-402(a)(1). So, although "failure to secure compensation" could plausibly mean failure to file a workers' compensation claim with the insurer on the employee's behalf, the WCA narrows it to mean failure to maintain insurance with an authorized insurer. By Plaintiff's own admission, Defendant carried workers' compensation insurance. Therefore, this exception to the exclusivity provision does not apply. Whether Defendant properly followed protocol is a matter to be litigated in the [Maryland State Workers' Compensation Commission], not this court.

*Goss v. Goode Companies, Inc.*, No. CV DKC 23-2257, 2026 WL 237451, at *12 (D. Md. Jan. 29, 2026).

Plaintiff's allegations support a reasonable inference or conclusion that he secured compensation as defined by the WCA. Following mention of his "workers compensation case," Plaintiff alleges he received "a check" but claims it was for "[three] times less than what [he] truly made," and that he utilized both "long term and short term insurance compan[ies]," which the court understands were part of the workers compensation process with KeHE. (ECF No. 11 at p. 5.) *Id.* The court agrees with KeHE that Plaintiff's dissatisfaction with the WCA process does not invoke any enumerated exception or other relief warrant the underlying suit against it. (ECF No. 2 at p. 3.) Accordingly, Plaintiff fails to allege facts to support any exception based on his failure to secure compensation under the WCA.

For these reasons, KeHE will be dismissed from this action pursuant to Rule12(b)(6).

## IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendant KeHE's Motion (ECF No. 2) will be granted and Defendant KeHE will be dismissed from this matter. Further, Defendant CPUS's Motion (ECF No. 15) will also be granted and Defendant CPUS, incorrectly named as CBRE, will also be dismissed from this matter.

/s/

Julie R. Rubin
United States District Judge

August 7, 2026